-PS-O-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CARLOS BAYON,

        Plaintiff,

    -v-

ANTHONY RESTAINO, COMMISSIONER
NCDSS,
NIAGARA CO. DEPUTY SHERIFF
TIM CALLAHAN,
STATE OF NEW YORK,
DIAMOND DETECTIVE AGENCY, INC.,
UNNAMED SECURITY GUARD OF
DIAMOND DETECTIVE,
UNNAMED ADMINISTRATIVE LAW JUDGE OF OTDA;
MRS. ELIZABETH BERLIN, NYS-OTDA.

        Defendants.

12-CV-0803S
ORDER



---

## **INTRODUCTION**

Plaintiff Carlos Bayon, who has filed numerous *pro se* actions in this court in the past,[1] has filed the instant *pro se* action seeking relief under 42 U.S.C. § 1983 (Docket No. 1) and has paid the filing fee. Plaintiff alleges that defendants violated his rights by their actions during and after an administrative hearing in the Niagara County Social Services Department. For the reasons set forth below, plaintiff's complaint is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

---

[1]*See Bayon v. Social Security*, 06-CV-6668; *Bayon v. Kaleida Health*, 02-CV-944; *Bayon v. Social Security*, 03-CV-488; *Bayon v. Cisek, et al.*, 98-CV-557; *Bayon v. SUNYAB, et al.*, 98-CV-578; *Bayon v. The State University, et al.*, 99-CV-437; *Bayon v. SUNY at Buffalo, et al.*, 99-CV-696; *Bayon v. The State University of New York, et al.*, 99-CV-923.

## PLAINTIFF'S ALLEGATIONS

Plaintiff's claims relate to the events which transpired on April 23, 2012 at the Niagara County Social Services Department ("NCSSD"), to which plaintiff had reported for a second administrative hearing in the Office of Temporary and Disability Assistance ("OTDA") in connection with his appeal of the denial by Fidelis Insurance of the coverage of medications to control his hyper-triglyceridemia and chronic acid reflux.[2] Upon arrival, while waiting for his hearing to be called, plaintiff observed defendant Unnamed Diamond Detective Agency Security Guard arrive and state to a female employee, allegedly while looking at plaintiff, that he had been summoned to "throw someone out the building." Plaintiff alleges that he overheard the security guard and NCSSD employees discuss the fact that the judge (presumably defendant OTDA unnamed Administrative Law Judge ("ALJ")), who was holding the hearing, had requested security for the hearing and that one of the employees "pointed not so discreetly" at him. After two and a half hours of waiting, the ALJ called the security guard into the hearing room to which plaintiff was subsequently admitted. Plaintiff states that "there were no visible posted warning signs at the doors regarding forbidden objects or weapons," and "no metal detectors or sheriff department deputies as in the past." Plaintiff states that because he had not been searched or prevented from entering the hearing room during a previous visit (presumably the first administrative hearing), he did not expect to be subjected to "an illegal search, arrest or assault and battery."

---

[2]As summarized herein, plaintiff's factual allegations are set forth in 36 paragraphs of Part 2 of his Statement of Claim. Complaint, pp. 7-11. The Court's summary of plaintiff's factual allegations omits, for the most part, plaintiff's characterizations, musings and impressions of the actions of the defendants at the hearing, which are discussed in a later section of this Order. See "Discussion" infra.

2

Upon entering the hearing room, plaintiff alleges, the ALJ locked the door and defendant Security Guard positioned himself between plaintiff and the door. The ALJ asked what was in the bag he had brought into the room, whereupon, plaintiff alleges, "as [if] on command" the Security Guard seized it and search it, findng a "closed and locked 'box cutter' ", which he then confiscated, while then waiving it about plaintiff's face, while asking plaintiff what he was planning to do with it.

Plaintiff then alleges that after the guard placed the box cutter out of reach, the ALJ, stated, with the tape recorder on, that plaintiff had brought a weapon to the hearing and interrogated him on whether he had any other weapons. Following his response that he had not, and that the box cutter was not a weapon, plaintiff states that the Security Guard "went crazy," shouting several times that it was in fact a weapon. It was only when plaintiff stopped disagreeing on this issue that the Security Guard backed off and, according to plaintiff, "the judge pretended and perhaps intended to continue with the hearing." It is unclear whether the hearing then took place, because plaintiff next asserts that he was "looking for a way out of the room," and following some colloquy between him and the ALJ, he was allowed to leave. When "finally released from their custody," plaintiff recounts that his heart was beating very fast and was therefore fearful of passing out. Such fear, plaintiff alleges, was further aggravated, resulting in hypoglycemia and a "panic attack," when he was followed closely to his car by the armed security guard, and when he was subsequently questioned and later followed for several miles by defendant Niagara County Deputy Sheriff Tim Callahan.

Following this episode, plaintiff attempted to contact the Office of Hearings of the OTDA, but was unable to reach them until August 22, 2012. After reaching them, plaintiff

3

requested copies of the tape recording from the two hearings. Plaintiff explains that such request was refused by defendant Berlin, Deputy Executive Director, OTDA, because he had been labeled as a "security risk." Plaintiff also requested from the NCSSD the name of the security guard for purposes of the instant lawsuit, but defendant Restaino, NCSSD Commissioner, never responded.

The complaint asserts a variety of claims, described both in plaintiff's statement of the "Nature of Suit" on the form complaint (Complaint, ¶ 2(C)) and in a separate statement of fourteen numbered claims (*Id.*, pp. 5-6). Plaintiff asserts "[v]iolations of 4th and 14th Amendment Rights-Illegal Search and Seizure, Unlawful Arrest and Dentention, Due Process; 5th Amendment Rights; Miranda Warning; Assault and Battery." (*Id.*, ¶ 2(C)).

## STANDARD OF REVIEW

In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (*per curiam*); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). Moreover, "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004); *and see Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). "The policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Abbas*, 480 F.3d at 639 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

4

Nevertheless, even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007)) (internal quotation marks and citation omitted); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) (discussing pleading standard in *pro se* cases after *Twombly*). "A document filed *pro se* is to be liberally construed ... , and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (internal quotation marks and citations omitted). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (2d Cir. 2007) (quoting *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999) (*per curiam*)).

Notwithstanding the foregoing, the Court has the authority to dismiss *sua sponte* complaints under certain circumstances, even when plaintiff has paid the filing fee. *See Fitzgerald v. First East Seventh Tenants Corp.*, 221 F. 3d 362, 363 (2d Cir. 2000); *see also Mallard v. United States District Court*, 490 U.S. 296, 307-08, 109 S.Ct. 1814, 104 L. Ed. 2d. 318 (1989). 28 U.S.C. § 1915(e)(2) states that "[n]otwithstanding any filing fee ... that may have been paid, the court shall dismiss the case at any time if the Court determines that ... the action is (i) frivolous or malicious; (ii) fails to state a claim upon which relief may

be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." "An action is frivolous as a matter of law when, *inter alia,* it is based on 'an indisputably meritless legal theory'- that is when 'it lacks an arguable basis in law...or [when] a dispositive defense clearly exists on the face of the complaint.' " *See Robinson v. Moore,* 2013 U.S. Dist. LEXIS 103674, at *6-7, (E.D.N.Y. July 22, 2013) (*quoting Livingston v. Adirondack Beverage Co.,* 141 F. 3d 434, 437 (2d Cir. 1998)).

Based on its evaluation, and for the reasons set forth below, the Court finds that plaintiff's complaint must be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

## DISCUSSION

The same statute that allows a litigant to commence a civil or criminal action in federal court *in forma pauperis* "authorizes federal courts to dismiss a claim filed *in forma pauperis* 'if satisfied that the action is frivolous ....' " *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L. Ed. 2d 338 (1989).

> Section 1915[e] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suits and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit ... and claims of infringement of a legal interest which clearly does not exist.... Examples of the latter class are claims describing fantastic or delusional

> scenarios, claims with which federal district judges are all too familiar.

*Neitzke*, at 327-28, 1833 (citations omitted). The U.S. Supreme Court elaborated on this "power to pierce the veil of the complaint's factual allegations" a few years later:

> [T]he § 1915[e] frivolousness determination, frequently made *sua sponte* before the defendant has even been asked to file an answer, cannot serve as a factfinding process for the resolution of disputed facts. ... [A] court may dismiss a claim as factually frivolous only if the facts alleged are "clearly baseless," a category encompassing allegations that are "fanciful," "fantastic," and "delusional." As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them.

*Denton v. Hernandez*, 504 U.S. 25, 32-33, 112 S. Ct. 1728, 1733, 118 L.Ed.2d. 240 (1992) (quoting *Neitzke*, 490 U.S. at 327, 109 S.Ct. at 1833).

The Second Circuit has consistently held that the court's authority to dismiss frivolous actions extends to meritless cases, even if the *pro se* plaintiff has paid the filing fee. *Zahl v. Kosovsky*, 471 F. App'x 34, 36 (2d Cir. 2012) ("A district court has inherent authority to dismiss meritless claims *sua sponte*, even where a plaintiff has paid the filing fee.") (citing *Fitzgerald*, 221 F.2d at 363-64); *see also Storm Eggink v. Gotfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (citations omitted); *Coleman v. Giuliani*, 144 F. App'x 186 (2d Cir. 2005).

Moreover, while the usual practice is to allow leave to replead a deficient complaint, *see* Fed.R.Civ.P. 15(a); *see also Ronzani v. Sanofi, S.A.*, 899 F.2d 195, 198 (2d Cir. 1990), especially where a complaint has been submitted *pro se*, *Davidson v. Flynn*, 32 F.3d 27,

31 (2d Cir. 1994), such leave may be denied where amendment would be futile. *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

Based on its evaluation of the complaint, the Court finds that plaintiff's claims must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i), and leave to amend must be denied. As set forth in his Statement of Claim, plaintiff's factual allegations, summarized above, include a series of assertions, characterizations and conjectures that can fairly be regarded as the type of "baseless," "fantastic," or "delusional" allegations that warrant dismissal of the complaint as frivolous within the meaning of 28 U.S.C. § 1915(e)(2)(B)(i).

In his statement of facts, plaintiff's describes his impression as he first entered the hearing room as follows:

> When I entered the hearings room the judge closed and locked the door with the security guard inside and the security guard positioned himself between the door and me. Although, I have been there before at that moment the low lights in the room and the coolness of the room gave me a gruesome feeling of a prison cell, torture and forced interrogation. I began to fear for my life and felt that I was trapped, imprisoned, under arrest and on the verge of torture and my heart began to pound faster and faster. Those feelings continue as of today.

(Complaint at p. 8, ¶ 11).

As previously described, plaintiff's entry was followed by his confrontation with the security guard over the box cutter. In this regard, he alleges that after shouting at him and waving the box cutter in his face, the guard "seemed out of control wearing black shooting gloves and I noticed the bulge of a gun on the side of his jacket, for the first time." (*Id.*, ¶ 14). Subsequently, plaintiff asserts, after he again stated that the box cutter wasn't a weapon, the security guard, as if on the ALJ's command, "went crazy and leaped and got

8

real close to my face shouting and repeating several times 'it is a weapon, it is a weapon.'"

(*Id.*, ¶ 16). Plaintiff then alleges that:

> The security guard assumed a shooting stance moving his hand as if he was going to grab his gun, threatening to shoot me or do physical harm to me, if I continue to disagree that the box cutter was a weapon.
>
> At that point I thought I was in a trap set by the judge to retaliate against me for calling the Fidelis lawyer a 'capitalist pig' in the first hearing. I also believed I was a prisoner in a dangerous situation and [had] been physically provoked to defend my life from an armed unstable security guard and the judge.

(*Id.*, pp. 8-9, ¶¶ 17-18).

The "fantastic" and "delusional" nature of much of the complaint is perhaps best exemplified by plaintiff's allegations with respect to the ALJ, and her conduct at the hearing:

> During their assault and battery on me the judge assumed an attack stance with her knees partly bent an [sic] her arms extended and was a willing and able commander ready to jump me and assist the security guard when the guard arrested, provoked, coerced, intimidated and tried to physically harm me. She was not passively standing by. They were a team in some kind of dangerous flashback mode.
>
> I believe the judge is unstable and corrupt and a partner of Fidelis and New York State and charged with denying benefits to recipients by any possible means. She also proved to be very capable of seeking revenge for what she perceived as an insult to a compatriot partner lawyer.

(*Id.*, p. 10, ¶¶ 26-27).

Plaintiff's allegations against defendant Niagara County Sheriff deputy Callahan are of a similar nature in terms of plaintiff's attributing to the defendants actions and motivations that are unsupported by factual allegations. Thus, plaintiff alleges that

9

Callahan, who asked him to leave the parking lot after the hearing, "apparently had been following me for unknown reasons and was a witness and a participant." *(Id.*, p. 10, ¶ 31). Plaintiff further alleges that when he responded to Callahan that he needed more time (presumably before leaving the parking lot as Callahan had requested), Callahan replied "'Do you have a bazooka or any other weapons.' I looked at him in disbelief and he said 'You have leave.'" *(Id.*, p.10, ¶ 32). Plaintiff then states that after being thus forced to leave the parking lot, he did so, "still convulsing for fear of being arrested or attacked by them." *(Id.*). Plaintiff further alleges that Callahan continued to follow him for several miles after he drove out of the parking lot, "preventing me from stopping nearby and recovering" and plaintiff claims that Callahan "may have had other undercover and uniform officers follow me all over town that day." *(Id.*, ¶¶ 31-33).

The frivolous nature of plaintiff's complaint is further reflected by one of the requests for relief set forth among his factual allegations, namely that the Court rule "on When a Tool is a Weapon" and in so doing effectively establish new laws with respect to what implements can be treated as weapons. Continuing to insist that his box cutter should not have been perceived by the defendants as a weapon, plaintiff explains:

> The court must rule and define in this case and if tools are weapons, changes need to be made and licenses issue[d] to sell, purchase, use and possess them. We cannot continue with this paranoid madness of making tools such as nail clippers, scissors and box cutters weapons of mass destruction allowing mentally unstable unscrupulous security guards to use deadly force at the sight of such items.

*(Id.*, p. 9, ¶¶ 24-25).

Allegations and claims for relief such as those quoted above "rise to the level of the irrational or the wholly incredible ...." *Denton*, 504 U.S. at 33. Accordingly, the Court determines that the complaint is frivolous within the meaning of § 1915(e)(2)(B)(i), and will be dismissed with prejudice.

Given this determination, the Court need not address other bases on which plaintiff's claims are dismissible. The Court nevertheless notes that its review of plaintiff's individual claims indicates that they would also be dismissible pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii) because they either fail to state a claim on which relief may be granted or seek monetary relief from a defendant who enjoys immunity from such relief. For example, plaintiff's numerous claims against defendant OTDA ALJ are dismissible under the doctrine of judicial immunity, which affords absolute immunity from suits for damages arising from acts performed in a judicial capacity. *Mireles v. Waco*, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991); *Forrester v. White*, 484 U.S. 219, 227, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988). Absolute judicial immunity extends to officers such as administrative law judges and hearing officers, *Butz v. Economou*. 438 U.S. 478, 514, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978), including state and local hearing officers such as defendant ALJ. *See, e.g., B.D.S. v. Southold Union Free Sch. Dist.*, 2009 U.S. Dist. LEXIS 55981, at *54-56 (E.D.N.Y. June 24, 2009) (state department of education hearing officer is entitled to absolute immunity); *Bloom v. NYS Comm'n of Health*, 573 F. Supp. 2d 732, 739 (E.D.N.Y. 2004) (administrative law judge presiding over professional medical conduct bureau is entitled to absolute immunity).

Defendant State of New York is likewise immune from plaintiff's civil rights suit because Eleventh Amendment immunity bars § 1983 suits against the State. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (citing *Hans v. Louisiana*, 134 U.S. 1, 21, 10 S. Ct. 504, 33 L. Ed. 842 (1890)); *see also Quern v. Jordan*, 440 U.S. 332, 340-41, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979).

Even as to those defendants who do not enjoy immunity from suit, plaintiff's claims would be dismissible because they fail to state a legally cognizable claim. Thus, for instance, plaintiff alleges that defendant Unnamed Security Guard neglected to advise plaintiff of his *Miranda* rights. However, even assuming that plaintiff was "in custody" during the hearing and subject to interrogation, and therefore entitled to *Miranda* warnings, *see United States v. Badmus,* 325 F.3d 133, 138 (2d Cir. 2003) (explaining when a person is in custody for purposes of *Miranda*), which is doubtful, it is well-established that the failure to provide *Miranda* warnings, standing alone, cannot be the basis of a Section 1983 action. *DeShawn E. By Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) (citing *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995) (*per curiam*)); *LaFrance v. Bemben*, 2013 U.S. Dist. LEXIS 4013, at *21 (E.D.N.Y. Jan. 10, 2013) (citing *DeShawn E.* and *Neighbour*).

Similarly, plaintiff fails to state a claim for false arrest, another claim directed at defendant Security Guard. The fact that after the ALJ hearing commenced (a hearing requested or consented to by plaintiff), the door was locked for the duration of the hearing does not show that plaintiff was subjected to a false arrest; plaintiff was not detained beyond the time required for the hearing, nor does he allege that he was actually arrested.

See *Bissinger v. City of New York*, 2007 U.S. Dist. LEXIS 70155, at *23 (S.D.N.Y. Sept. 24, 2007) ("A claim for false arrest must be premised on an actual arrest.") (citing *Griffin-Nolan v. Providence Wash. Ins. Co.*, 2005 U.S. Dist. LEXIS 12902, at *13 (N.D.N.Y. June 20, 2005), *Porat v. Lincoln Towers Cmty. Ass'n*, 2005 U.S. Dist. LEXIS 4333, at *11 (S.D.N.Y. Mar. 27, 2005), *Nazarian v. Compagnie Nationale Air France*, 989 F. Supp. 504, 508 (S.D.N.Y. 1998)).

### State Claims

Plaintiff raises at least one claim under state law in his complaint: assault and battery. In addition, his unlawful arrest claim can be construed as raising, in addition to a federal claim (which the Court has dismissed), a claim under New York law. *See Broughton v. State*, 37 N.Y.2d 451, 456-459 (1975) (discussing components of false arrest).

While the Court has the authority to entertain state law claims under its supplemental jurisdiction, because all of Bayon's federal claims have been dismissed, the Court declines to exercise such jurisdiction. 28 U.S.C. § 1367(c)(3), *Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) (stating it is well settled that "[i]n general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). Accordingly, the Court declines to exercise supplemental jurisdiction over plaintiff's state constitutional claims and they will be dismissed without prejudice.

### CONCLUSION

For the reasons discussed above, the complaint is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). While the usual practice is to allow leave to

replead a deficient complaint, see Fed. R. Civ. P. 15(a); see also Ronzani, supra, 899 F.2d at 198, especially where a complaint has been submitted *pro se*, such leave will be denied here, as amendment would be futile. See Lucente, supra, 310 F.3d at 258. Plaintiff's state constitutional claims are dismissed without prejudice.

Plaintiff's motions for service by the U.S. Marshal (Docket No. 2) and for an extension of time to effect service (Docket No. 3) are denied as moot, given the dismissal of the complaint.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 Led.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

## ORDER

IT HEREBY IS ORDERED, that the complaint is dismissed with prejudice;

FURTHER, plaintiff's state claims are dismissed without prejudice; and

FURTHER, that leave to appeal to the Court of Appeals as a poor person is denied.

SO ORDERED.

_____
JOHN T. CURTIN
United States District Judge

DATED: 9/18, 2013
Buffalo, New York